## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MATTHEW J. RYAN,

Plaintiff,

v.

BUCKLEYSANDLER, LLP, *et al.*,

Defendant.

Civil Action No. 13-01816

Judge Beryl A. Howell

### MEMORANDUM OPINION

The plaintiff, a *pro se* attorney, brings this action against his former employer, BuckleySandler LLP and several of its employees, alleging age discrimination in violation of the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401, *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq. See* Compl., ECF No. 1, ¶¶ 127, 133. The defendants have moved to dismiss the complaint and to compel arbitration based upon an arbitration agreement signed by the plaintiff at the outset of his employment. *See* Defs.' Mot. Dismiss & Compel Arbitration, ECF No. 3 ("Defs.' Mot. Dismiss"). For the reasons stated below, the Court finds that all of the plaintiff's claims are the subject of a valid arbitration agreement and therefore dismisses the case.

## I.    BACKGROUND

In 2008, the plaintiff began working for Buckley Kolar, LLP—the predecessor to one of the defendants in this action, BuckleySandler, LLP ("BuckleySandler")—on a temporary basis as a contract attorney primarily responsible for document review. *See* Compl. ¶ 10. In December 2009, the plaintiff accepted a position as a temporary staff attorney with BuckleySandler, which was made permanent in September 2010. *Id.* ¶¶ 11–13. The staff attorney program was

1

managed by Kirk Jensen and Elizabeth McGinn, partners at BuckleySandler.  *Id.* ¶ 15.  As a condition of his employment, the plaintiff entered into an agreement that required "final and binding arbitration" as the "sole and exclusive remedy" for any "claims and disputes . . . related in any way to [his] employment or the termination of [his] employment."  *See* Defs.' Mem. Pts. Auths. Supp. Mot. Dismiss & Compel Arbitration ("Defs' Mem."), Declaration of Terri Carnahan, Ex. 1 ("Arbitration Agreement"), ECF No. 3-2.  According to the plaintiff, at some point thereafter BuckleySandler requested that the plaintiff, "as a condition of continued employment," sign an agreement, which the plaintiff "believe[s] . . . contained an Arbitration Agreement." *See* Pl.'s Response to Defs.' Mot. Dismiss & Compel Arbitration ("Pl.'s Response"), Declaration of Matthew J. Ryan ¶ 3 ("Ryan Decl."), ECF No. 6 ("Unsigned Employment Agreement"). The plaintiff "declined to sign" the proffered agreement, but suffered "no adverse effect upon [his] employment."  *Id.*

On several occasions during the course of his employment at BuckleySandler, the plaintiff was passed over for promotion to the position of "Regulatory Attorney."  *See* Compl. ¶¶ 43–45, 54, 96, 106.  The plaintiff alleges that this was the result of illegal age discrimination. *See id.* ¶¶ 127, 133.  On January 31, 2013, after being passed over for promotion, the plaintiff attended a meeting where Kirk Jensen informed him that his position was being terminated.  *Id.* at ¶ 111.  At the meeting, BuckleySandler offered the plaintiff a Confidential Separation Agreement and General Release, which the plaintiff subsequently signed.  Ryan Decl. ¶ 4, Ex. 1 ("Separation Agreement").  The Separation Agreement provided the plaintiff with severance pay, limited medical coverage, and certain outplacement services in exchange for a release of certain claims that the defendant might have against the employer, including "[a]ny and all claims of

discrimination . . . based on . . . age . . . ." Separation Agreement ¶¶ 2, 3(c).  Additionally, the

Separation Agreement contained a merger clause, which stated:

> This Agreement sets forth the entire agreement between the parties with respect to
> the subject matter hereof and supersedes any and all prior agreements or
> understandings between them pertaining to such subject matter.  There are no
> written or oral understandings, promises, representations, or agreements directly
> or indirectly related to this Agreement.  No modification, revision, addition to, or
> alteration of this Agreement will be binding unless in writing and signed by
> Employee and the Firm.

*Id.* ¶ 13(b).  The Separation Agreement did not provide any forum to resolve disputes arising out

of the Separation Agreement.

On July 26, 2013, following his termination, the plaintiff filed a charge with the EEOC.

Compl. ¶ 123.  Upon investigation, the EEOC was "unable to conclude" that BuckleySandler

violated the law in terminating the plaintiff.  *See* Compl.  The plaintiff then filed this action

against BuckleySandler, Kirk Jensen, and Elizabeth McGinn alleging that his termination was

the result of age discrimination in violation of the DCHRA and the ADEA.  See Compl. ¶¶ 127,

133.  In response, the defendants filed the pending Motion to Dismiss and Compel Arbitration

pursuant to the Federal Arbitration Act ("FAA"), seeking to dismiss or stay proceedings pending

arbitration. The defendants also seek to recover attorneys' fees and costs associated with filing

this motion.  *See* Defs.' Mot. Dismiss.

## II.    LEGAL STANDARD

A motion to compel arbitration, pursuant to the Federal Arbitration Act ("FAA"), 9

U.S.C. § 4, is treated "as if it were a request for summary disposition of the issue of whether or

not there had been a meeting of the minds on the agreement to arbitrate" and, therefore, is

subject to the summary judgment standard of Federal Rule of Civil Procedure 56 (a).  *Aliron*

*Int'l, Inc. v. Cherokee Nation Indust., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008) (internal

quotations and citations omitted).  A motion to compel arbitration focuses judicial scrutiny on

the arbitrability of the dispute, rather than the dispute itself.  *See Aliron Int'l*, 531 F.3d at 865;

*Tower Ins. Co. of New York v. Davis/Gilford, A JV*, 967 F. Supp. 2d 72, 77 (D.D.C. 2013); *see

also Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("[T]he summary judgment

standard is appropriate in cases where the District Court is required to determine arbitrability,

regardless of whether the relief sought is an order to compel arbitration or to prevent

arbitration.").

      Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to a judgment as a matter of law," upon consideration of  "materials in the record" that establish

the absence or presence of a genuine dispute.  FED. R. CIV. P. 56(a), (c).  While the moving party

bears the burden of showing the absence of dispute material facts, "[t]he evidence is to be

viewed in the light most favorable to the nonmoving party and the court must draw all reasonable

inferences in favor of the nonmoving party." *Talavera v. Shah,* 638 F.3d 303, 308 (D.C. Cir.

2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

      Disputes over the application of the law to undisputed facts are particularly amenable to

resolution on summary judgment since such disputes raise only legal questions properly within

the domain of the Court to determine. *Tower Ins. Co.*, 967 F. Supp. 2d at 78 (citing *Spark v.

Catholic Univ. of Am.*, 510 F.2d 1277, 1281 (D.C. Cir. 1975)); *see also Henry v. S/S Bermuda

Star*, 863 F.2d 1225, 1229 n. 11 (5th Cir. 1989); *Bassis v. Universal Line, S.A.*, 436 F.2d 64, 68

(2d Cir. 1970).  Consequently, "[t]he proper interpretation of an unambiguous contract provision

is a question of law, and thus is well-suited to disposition by summary judgment." *Tower Ins.

Co.*, 967 F. Supp. 2d at 78 (citing *United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin.

Agency*, 456 F. Supp. 2d 46, 55 (D.D.C. 2006), *aff'd*, 530 F.3d 980 (D.C. Cir. 2008)); *see also

*Noel v. Baskin*, 131 F.2d 231, 233 (D.C. Cir. 1942) ("[N]o citation of authority is necessary to establish the proposition that the construction of written instruments is a question of law for the court."); *ECHO, Inc. v. Whitson Co.*, 52 F.3d 702, 705 (7th Cir. 1995) ("Contract interpretation is particularly suited to disposition by summary judgment.").

## III.    DISCUSSION

"[A]rbitration is a matter of contract." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010).  Thus, the Supreme Court has directed that "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) ("[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." (emphasis omitted)).  Although there is a federal policy in favor of arbitration, the presumption applies only with respect to the scope of an arbitration clause; not whether the parties have entered into an arbitration agreement in the first instance.  *Granite Rock*, 561 U.S. at 301–302.  "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Aliron*, 531 F.3d at 865 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also Nat'l R.R. Passenger Corp. v. ExpressTrak, L.L.C.*, 330 F.3d 523, 529 (D.C. Cir. 2003).  In the instant matter, District of Columbia law governs the formation of the contracts at issue.  *See* Separation Agreement ¶ 13(a) ("The laws of the District of Columbia . . . shall govern the validity of this Agreement . . . .").[1]

---

[1] In addition, the parties have not raised any choice of law issues, and both parties in their motion papers have relied upon District of Columbia law.

The plaintiff argues that the Arbitration Agreement is no longer enforceable for two separate reasons.  First, the plaintiff argues that the Arbitration Agreement was superseded by the Separation Agreement, as evidenced by the Separation Agreement's merger clause.  Second, the plaintiff argues that the Unsigned Employment Agreement voids the Arbitration Agreement.[2] Both arguments will be addressed *seriatim* below.

### A.      The Arbitration Provision is Enforceable.

"When parties to a contract have executed a completely integrated written agreement, it supersedes all other understandings and agreements *with respect to the subject matter of the agreement* between the parties, whether consistent or inconsistent . . . ." *Bank of America v. District of Columbia*, 80 A.3d 650, 676 (D.C. 2013) (emphasis added) (quoting *Masurovsky v. Green*, 687 A.2d 198, 202 (D.C. 1996); *see also Bowden v. United States*, 176 F.3d 552, 554 (D.C. Cir. 1999); Restatement (Second) of Contracts § 210(1) ("A completely integrated agreement is an integrated agreement adopted by the parties as a complete and exclusive statement of the terms of the agreement.").  A completely integrated agreement contrasts with a partially integrated agreement, where the writing represents the agreement of the parties with respect to the matters stated therein, but where a court may consider extrinsic terms that are consistent with the partially integrated agreement.  *Bank of America*, 80 A.3d at 676*; see also Howard Univ. v. Good Food Servs.*, 608 A.2d at 126; *Ozerol v. Howard Univ.,* 545 A.2d 638, 641 (D.C. 1988); Restatement (Second) of Contracts § 213.

---

[2]  The plaintiff's remaining arguments concern whether the Separation Agreement waived specific discrimination claims of the plaintiff against the defendant.  *See* Pl.'s Response at 6–8.  "[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims[,]" however.  *Wolff v. Westwood Mgmt., LLC*, 558 F.3d 517, 521 (D.C. Cir. 2009) (quoting *Air Line Pilots Ass'n, v. Fed. Express Corp.*, 402 F.3d 1245, 1248 (D.C. Cir. 2005)).  Since the Arbitration Agreement is binding upon the parties, it would be inappropriate to discuss or rule on the potential merits of the plaintiff's underlying claims.

Ordinarily, "[t]he question of whether an agreement is completely integrated is a preliminary question of fact for the trial court," *Masurovsky*, 687 A.2d at 202, and may occasion the taking of evidence.  *See, e.g.*, *Bank of America*, 80 A.3d at 676.  Such evidence is unnecessary in the present case, however, because whether the Separation Agreement is fully integrated or partially integrated does not alter the outcome in the instant action.

The Separation Agreement's merger clause is expressly limited to the "subject matter" of the Separation Agreement.  *See* Separation Agreement ¶ 13(b) ("This Agreement sets forth the entire agreement between the parties with respect *to the subject matter hereof* . . . ." (emphasis added)).  The Separation Agreement concerns the employment law claims waived and released by the plaintiff, but is silent as to the forum for the resolution of those claims.  In this sense, the Arbitration Agreement (which mandates the forum for the resolution of claims) concerns a distinct subject matter from the Separation Agreement (which addresses the employment law claims of the defendant).  Accordingly, even if the Separation Agreement is deemed fully integrated, the Arbitration Agreement is still binding on the parties because it concerns a different "subject matter" from the Separation Agreement.  Likewise, if the Separation Agreement is only partially integrated, the Arbitration Agreement would still be considered as an additional consistent term to the Separation Agreement.  Under either theory, the Arbitration Agreement is enforceable.

This result is consistent with the holdings of other courts, which have recognized that "'a contractual clause selecting either a judicial or an arbitral forum for the resolution of disputes establishes a legal right which is analytically distinct from the rights being asserted in the dispute to which it is addressed.'"  *Pelletier v. Yellow Transp., Inc.*, 549 F.3d 578, 581 (1st Cir. 2008) (quoting *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 195 (3d Cir. 1983),

*overruled on other grounds by Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495 (1989)).[3]

Accordingly, courts throughout the country have enforced pre-existing arbitration agreements when a subsequent agreement does not address the issue of arbitration.  *See, e.g.*, *Pelletier*, 549 F.3d at 581 ("Thus, the merger clause, which precludes agreements over the parties' 'right to terminate,' does not nullify the DRA, which only deals with the mechanisms for resolving disputes."); *Ramierez-Baker v. Beaser Homes, Inc.*, 636 F. Supp. 2d 1008, 1016 (E.D. Cal. 2008) ("Absent any showing that [a party's] written Arbitration Agreement [ ] was either expressly or implicitly inconsistent with his arbitration obligation under [separate agreement], [a party] may not rely on the written employment agreement's silence about dispute resolution to establish that such agreement superseded his [separate agreement] to arbitrate." (alterations in original) (quoting *Thorup v. Dean Witter Reynolds, Inc.,* 180 Cal. App. 3d 228, 234 (1986))); *Estabrook v. Piper Jaffray Cos.*, 492 F. Supp. 2d 922, 927 (N.D. Ill. 2007); *see also Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, No. 13-797, 2014 WL 4099289, at *4 (2d Cir. Aug. 21, 2014) ("In this Circuit, an agreement to arbitrate is superseded by a later-executed agreement containing a forum selection clause if the clause 'specifically precludes' arbitration . . . .").  The Separation Agreement is silent as to the forum for resolving disputes and is, by its terms, limited strictly to "the subject matter hereof."  Accordingly, the Separation Agreement does not supersede the Arbitration Agreement.

### B.     The Unsigned Employment Agreement Does Not Void the Arbitration Agreement

The plaintiff contends, in the alternative, that the Unsigned Employment Agreement invalidates the Arbitration Agreement because he declined to sign the Unsigned Employment Agreement.  Pl.'s Response at 4.  The plaintiff cites no support for his contention that the failure

---

[3]  Moreover, the plaintiff appears to recognize this distinction, as his briefing explicitly distinguishes between "substantive and procedural rights."  *See* Pl.'s Response at 5.

to sign an offered agreement acts as a revocation of an original agreement concerning that subject matter.  Nevertheless, the gravamen of the plaintiff's argument appears to be as follows: The plaintiff was required to sign an amended employment agreement as a condition of employment.  The plaintiff refused to sign the amended employment agreement but was not terminated from his position for his refusal.  Under the plaintiff's theory, the plaintiff's refusal constituted both a rejection of BuckleySandler's offered employment agreement and constituted a counter-offer to BuckleySanlder.  By continuing to employ the plaintiff, BuckleySandler "accepted" the plaintiff's "counter-offer" and thereby voided the original Arbitration Agreement. *See* Pl.'s Response at 4.  In short, the plaintiff claims he "was no longer bound by the terms of any employment agreement." *Id.*

The plaintiff's argument is deeply flawed.  First, as a matter of basic contract law, it is entirely unclear how the plaintiff's silence with respect to the Unsigned Employment Agreement could reasonably constitute a counter-offer supporting an inference of acceptance by the defendant.  While silence generally constitutes a rejection of an offer, in "exceptional" circumstances—none of which are implicated in the present case—silence may be deemed an acceptance of an offer.  *See* RESTATEMENT (SECOND) OF CONTRACTS § 69 & cmt. a. ("Ordinarily an offeror does not have power to cause the silence of the offeree to operate as acceptance."). The plaintiff's novel theory argues that the plaintiff's silence is a counter-offer, and that BuckleySandler's subsequent silence is an acceptance of the silent offer.  Although the Court is mindful that actions may speak louder than words, rarely has a plaintiff asked a court to read so much into so little.  "Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain." RESTATEMENT (SECOND) OF CONTRACTS § 33*; see also Kramer Assocs. v.*

*Ikam, Ltd.,* 888 A.2d 247, 251 (D.C. 2005) ("For an enforceable contract to exist, there must be both (1) agreement as to all material terms, and (2) intention of the parties to be bound." (citing *Georgetown Entm't Corp. v. Dist. of Columbia,* 496 A.2d 587, 590 (D.C. 1985)).  The plaintiff has not—and because the offer was silent cannot—identify any of the terms of the supposed counter-offer.[4]

Second, the original Arbitration Agreement specifically states that "this mutual obligation to arbitrate may not be modified or rescinded except by the mutual written consent of both the Firm and [the signatory]."  Arbitration Agreement.  The plaintiff has not pointed to any writing, other than the Separation Agreement, discussed *supra*, that could modify or rescind the terms of the Arbitration Agreement.  Certainly, the plaintiff's "counteroffer" *sub silentio* does not qualify.  Therefore, the Arbitration Agreement was not revoked by the subsequent Unsigned Employment Agreement and is still binding upon the parties.

### C.       The Plaintiff's Claims Will Be Dismissed During the Pendency of Arbitration

The only matter left for the Court is whether the suit should be dismissed or stayed pending the outcome of the arbitration.  While the D.C. Circuit has not addressed this issue explicitly, other Circuit courts have reached divergent views on the matter.  *See Braxton v. O'Charley's Rest. Properties*, LLC, No. 13-CV-00130, 2014 WL 585324 (W.D. Ky. Feb. 14, 2014) (discussing circuit split); *see also* Richard A. Bales & Melanie A. Goff, *An Analysis of an Order to Compel Arbitration: To Dismiss or Stay?*, 115 PENN ST. L. REV. 539, 547 (2011); Angelina M. Petti, Note, *Judicial Enforcement of Arbitration Agreements: The Stay-Dismissal Dichotomy of FAA Section 3*, 34 HOFSTRA L. REV. 565, 575–584 (2005).

---

[4] Indeed, to the extent the plaintiff could rely on custom or course-of-dealing to fill-in the missing terms, such dealings would imply an arbitration clause.

The Third, Seventh, and Tenth Circuits have concluded that Section 3 of the FAA requires that the suit be stayed until the conclusion of the arbitration.  *See Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 732 n. 7 (7th Cir. 2005) ("[T]he proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings pending arbitration rather than to dismiss outright."); *Lloyd v. HOVENSA*, LLC, 369 F.3d 263, 269 (3d Cir. 2004); *Adair Bus. Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994).  Section 3 provides that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."  FAA, 9 U.S.C. § 3.  A primary rationale for these decisions is that dismissing the case may subject the party moving to compel arbitration to an unnecessary appeal of the dismissal while the arbitration is proceeding.  *See, e.g., Lloyd*, 369 F.3d at 270 ("The effect of that stay is twofold: it relieves the party entitled to arbitrate of the burden of continuing to litigate the issue while the arbitration process is on-going, and it entitles that party to proceed immediately to arbitration without the delay that would be occasioned by an appeal of the District Court's order to arbitrate.  Under § 16 of the FAA, 9 U.S.C. § 16, whenever a stay is entered under § 3, the party resisting arbitration is expressly denied the right to an immediate appeal.").  This rationale is of limited import here, where the defendants have moved for dismissal of the Complaint and thereby assumed the risk of a possible appeal.  *See generally* Def.'s Mot. Dismiss, ECF No. 3.

In contrast to the Third, Seventh, and Tenth Circuits, the majority of Circuit courts to consider this issue have concluded that Section 3 of the FAA does not preclude dismissal of a lawsuit when all of the claims asserted will be submitted to the arbitrator.  *See, e.g., Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 372 (1st Cir. 2011) ("Where one side is

entitled to arbitration of a claim brought in court, in this circuit a district court can, in its

discretion, choose to dismiss the law suit, if all claims asserted in the case are found arbitrable."

(quotations and citations omitted)); *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252

F.3d 707, 709 (4th Cir. 2001) (sanctioning dismissal "when all of the issues presented . . . are

arbitrable"); *Aviles v. Russell Stover Candies, Inc.*, 559 F. App'x 413, 415 (5th Cir. 2014)

(affirming dismissal rather than stay under Fifth Circuit precedent); *Alford v. Dean Witter*

*Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992) (stating that dismissal, as opposed to a stay

pending arbitration, is proper "when *all* of the issues raised in the district court must be

submitted to arbitration"); *Ozormoor v. T–Mobile USA, Inc.*, 354 F. App'x. 972, 975 (6th Cir.

2009) ("[Plaintiff] challenges the dismissal of his suit, asserting that 9 U.S.C. § 3 requires district

courts to stay suits pending arbitration rather than dismiss them. We have already rejected that

argument."); *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073-74 (9th Cir. 2014)

("We have held that, notwithstanding the language of § 3, a district court may either stay the

action or dismiss it outright when, as here, the court determines that all of the claims raised in the

action are subject to arbitration.") (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635 (9th

Cir. 1988)).

  Moreover, while the D.C. Circuit has not explicitly opined on this issue, it has upheld a

finding that Section 3 of the FAA does not preclude dismissal of an action "in the proper

circumstances," including where "all issues raised in the complaint must be submitted to

arbitration." *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, No. 05-CV-00151, 2006 WL

1793295, at *3 (D.D.C. June 28, 2006) (citations and internal quotations omitted) *aff'd*, 531 F.3d

863 (D.C. Cir. 2008); *see also Cole v. Burns Int'l Sec. Servs.*, 1996 U.S. Dist. LEXIS 22541 at

11-12 (D.D.C. Jan. 31, 1996), *aff'd*, 105 F.3d 1465 (D.C. Cir. 1997).

This Court will follow the majority rule regarding the propriety of dismissing a case where all of the claims are subject to arbitration. *See Haire v. Smith, Currie & Hancock LLP*, 925 F. Supp. 2d 126, 134 (D.D.C. 2013) (compelling arbitration and dismissing the case after finding "that the parties intended the issue of arbitrability to be resolved by the arbitrator" and all other claims likewise belonged to the arbitrator); *Avue Technologies Corp. v. DCI Grp., L.L.C.*, No. 06-CV-0327, 2006 WL 1147662, at *6 (D.D.C. Apr. 28, 2006) ("[The plaintiff's] motion to stay arbitration proceedings will be denied and, since that is the entirety of the relief sought in this action, the case will be dismissed."); *but see White v. Four Seasons Hotels & Resorts*, No. 13-1399, 2013 WL 6171595, at *7 (D.D.C. Nov. 26, 2013) ("[T]he Court shall stay, not dismiss, proceedings on any claim found to be within the arbitration provision and referable to arbitration.").

In the instant matter, the plaintiff seeks damages stemming from alleged age discrimination. In light of the conclusions set out above, however, the Arbitration Agreement requires this issue to be arbitrated, and, therefore, no issues are left for this Court to resolve.[5] In these circumstances, dismissal is appropriate. *See, e.g.*, *Aliron*, 2006 WL 1793295, at *3 ("[A]ll of Plaintiff's claims must be submitted to arbitration, since the arbitration clause applies to any dispute that may arise between the parties. Since there is no further action to be taken by this Court, it is appropriate to dismiss this case in its entirety."); *See also* Richard A. Bales &

---

[5] The defendants in this case have moved for sanctions in the form of attorneys' fees for having to litigate these issues. A court has "inherent authority to order sanctions, including attorney's fees, if a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Priority One Servs., Inc. v. W & T Travel Servs.*, LLC, 502 F. App'x 4, 6 (D.C. Cir. 2013) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). "But in order to do so, the court must 'make a specific finding,' by clear and convincing evidence, that a party so acted." *Id.* (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)). Statutory authority for an award of attorneys' fees also exists where a party "so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Although the plaintiff cannot seek relief in this Court, the Court is not persuaded that the Complaint was filed in bad faith or to do harm to the defendants in the process. In short, no clear and convincing evidence has been shown that the plaintiff is proceeding in bad faith or that sanctions are warranted. Thus, the defendants' request for sanctions is denied.

Melanie A. Goff, *An Analysis of an Order to Compel Arbitration: To Dismiss or Stay?*, 115 PENN ST. L. REV. at 542 ("If all issues between the parties fall within the arbitration provision, the court should, in its discretion, dismiss the action and leave the parties to the decision of the arbitrator, pursuant to the parties' contractual agreement.").

IV.     **CONCLUSION**

All of the plaintiff's claim in this action must be submitted to arbitration for resolution. Accordingly, the defendants' Motion to Dismiss and Compel Arbitration is granted and this case is dismissed.  An Order will issue with this Memorandum Opinion.

Date: September 25, 2014

_____
BERYL A. HOWELL
United States District Judge